UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NORMAN CHARLES JANSKY,

    Plaintiff,

v.                                          CASE NO. 3:17-cv-1222-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for a Period of Disability and Disability Insurance Benefits ("DIB"). Following an administrative hearing held on August 2, 2016, the assigned Administrative Law Judge ("ALJ") issued a decision on September 26, 2016, finding Plaintiff not disabled from January 16, 2013, the amended alleged disability onset date, through September 30, 2014, the date last insured.[2] (Tr. 10-24, 37-54, 185.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 12.)

[2] Plaintiff had to establish disability on or before September 30, 2014, his date last insured, in order to be entitled to a Period of Disability and DIB. (Tr. 13.)

I.     Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

II.    Discussion

Plaintiff argues that the ALJ improperly discounted the opinions of N. Scott Howell, D.O., the only treating and/or examining source in this case who

expressed an opinion on Plaintiff's limitations, while according great weight to the opinions of the State agency non-examining psychologist, Alan Harris, Ph.D., and oncologist, R. James Mabry, M.D., both of whom did not have access to the complete medical evidence in the record at the time they issued their opinions. Defendant responds that substantial evidence supports the ALJ's decision. For the reasons that follow, the Court agrees with Defendant.

### A.     Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and

extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, see Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam), 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," Cooper v. Astrue, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." Wainwright v. Comm'r of Soc. Sec. Admin., 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); see also Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 F. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam); see also SSR 96-6p[3] (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining

---

[3] SSR 96-6p was rescinded and replaced by SSR 17-2p effective March 27, 2017, but Plaintiff's claim was filed in September 2014; as such, SSR 96-6p continues to apply in Plaintiff's case.

sources). The ALJ is not bound by the findings of the non-examining physicians, and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 776 F.2d 834, 835 (11th Cir. 1985). However, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

### B. The ALJ's Decision

At step two of the five-step sequential evaluation process, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: aortic aneurysm, degenerative disk disease, hernia, and hypertension. (Tr. 15.) The ALJ then found that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work, except:

> [He] is able to stand or walk for six hours per eight hour workday and sit for six hours per eight hour workday, with normal breaks; occasionally climb ladders, ropes and scaffolds; frequently climb ramps or stairs; frequently balance, stoop, crouch, kneel and crawl; and should avoid concentrated exposure to excessive vibration and to hazards.

(Tr. 17.)

In making this finding, the ALJ discussed Plaintiff's testimony, the treatment records, the objective studies, the State agency consultants' opinions, and the Physical RFC Questionnaire completed by Dr. Howell.[4] (*Id.*) The ALJ addressed the opinions of the State agency non-examining physicians as follows:

---

[4] The ALJ mistakenly referred to Dr. Howell as "N. Scott Aowen, D.O." (Tr. 22.)

State agency consultants Alan Harris, Ph.D. and David Clay, Ph.D. respectively opined on November 2, 2014 and on January 5, 2015 that the claimant had no restriction of activities of daily living; no difficulties in maintaining social functioning or in maintaining concentration, persistence or pace; and no repeat episodes of decompensation, each of extended duration. . . . State agency consultant R. James Mabry, M.D. opined on January 14, 2015 that the claimant was able to occasionally lift and/or carry twenty pounds and ten pounds frequently; stand and/or walk for six hours in an eight hour workday; sit for six hours in an eight hour workday; occasionally climb ladders, ropes or scaffolds; frequently stoop, kneel, crouch and crawl; and should avoid concentrated exposure to vibration and to hazards. . . . The undersigned assigns great weight to these opinions. As State agency consultants, they are familiar with the disability review process and had the opportunity to bring this knowledge to their review of the entire medical record as of the dates of their respective assessments. Although medical evidence was submitted after their assessments, there is no evidence of worsening of the claimant's condition or of a new injury to render their opinions less persuasive. In addition, these opinions are consistent with the overall record, which revealed the claimant ambulated normally, and had normal motor strength and tone; normal movement of all extremities; normal coordination; normal reflexes; and normal sensation. . . .

(Tr. 21-22.)

The ALJ then addressed Dr. Howell's opinions as follows:

[Dr. Howell] completed a Physical [RFC] Questionnaire in December of 2014 in which he opined the claimant's experience of pain or other symptoms would constantly interfere with attention and concentration; that he was capable of low stress jobs; that he was able to walk for two city blocks; sit for thirty minutes at one time; stand for two hours at one time; sit for four hours total in an eight hour workday; stand/walk for two hours total in an eight hour workday; would need to include periods of ten minutes of walking, every thirty minutes, during an eight hour workday; needed to be able to shift positions at will; would sometimes need to take unscheduled breaks; should elevate his legs with prolonged sitting, and in a sedentary position should elevate his legs twenty-five

6

percent of an eight-hour workday; and did not need to use an assistive device. Exhibit 17F at pages 3-4. In addition, he opined that the claimant was able to frequently lift and carry twenty pounds and never fifty pounds; frequently look down, turn his head right or left, look up, and hold his head in a static position; should rarely climb ladders or stairs; occasionally twist, stoop, and crouch; had no significant limitations with reaching, handling or fingering; that he was likely to have "good days" and "bad days"; and that he was likely to miss more than four days per month. Exhibit 17F at page 5.

(Tr. 22; 510-14.)

The ALJ assigned "little weight" to Dr. Howell's opinion, because it was "inconsistent with the overall medical evidence." (Tr. 22.) The ALJ explained:

> [T]reating providers generally noted the claimant ambulated normally; that his gait was normal; and that he had normal movement of all extremities. Chiropractic treatment notes [sic] ambulated normally, and that physical examination was unremarkable, including normal arterial pulses; normal motor strength and tone; normal movement of all extremities; normal coordination; normal reflexes; normal gait; and normal sensation. Exhibits 3F at pages 4, 8, 11, 2F at pages 1, 5, 8, 13F at page 10. Chiropractic treatment notes in October of 2013 stated the claimant's prognosis was good; that the claimant felt better after adjustment; and that the claimant had experienced an increase in range of motion and muscle strength and a decrease in pain since treatment began, and that assessment continued through December 14, 2014. See, for example, Exhibit 14F at pages 83, 87, 95, 103, 109[.]

(*Id.*)

In sum, the ALJ stated that the RFC assessment was "supported by a totality of the evidence." (*Id.*) He noted: "The claimant suffers from severe physical impairments, but the physical findings, observations and objective studies have largely demonstrated adequate functioning with some transient

7

symptoms that have been accounted for with the reduced light limitations." (*Id.*)
Thus, the ALJ found that through the date last insured, Plaintiff was capable of performing his past relevant work as a real estate sales agent. (Tr. 23.)

## C. Analysis

The undersigned finds that the ALJ's decision is supported by substantial evidence. First, the ALJ did not err in his evaluation of Dr. Howell's opinions. As an initial matter, although Plaintiff argues that Dr. Howell was a treating and/or examining physician, the record does not show any treatment notes or examinations performed by Dr. Howell at any point of time. The only record from Dr. Howell is his Physical RFC Questionnaire dated December 23, 2014 (after Plaintiff's date last insured), in which he does not provide any information as to the "[f]requency and length of contact" with Plaintiff. (Tr. 510; *see also* Tr. 245 (listing Dr. Howell as a treating or examining doctor, but without providing any dates of treatment or examination)[5].) Also, Dr. Howell did not offer an opinion as to Plaintiff's functioning as of the date last insured, because his RFC Questionnaire was completed on December 23, 2014 and did not indicate that the opined limitations applied retroactively. In sum, as Plaintiff has not shown that Dr. Howell has ever treated or examined him, the ALJ was not required to

---

[5] There is one more notation in the record that Plaintiff was "[s]een by Dr. Howel [sic] [a] few months ago" (Tr. 322), which was made during an encounter on July 20, 2015. It is unclear whether this is the same Dr. Howell, whether Plaintiff was examined by him once or several times, and whether the examination(s) occurred prior to the date last insured.

give deference to his opinion. Even assuming that Dr. Howell examined Plaintiff once before completing the Physical RFC Questionnaire, his opinion would still not be entitled to any particular weight. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (finding that the opinion of a one-time examining doctor is not entitled to any particular weight).

Moreover, the ALJ's reasons for assigning "little weight" to Dr. Howell's opinion are supported by substantial evidence. As the ALJ stated, Dr. Howell's opinion was inconsistent with the overall medical evidence, which showed, *inter alia*, that Plaintiff ambulated normally, exhibited normal movement of all extremities, and had a normal gait, arterial pulses, motor strength, tone, coordination, reflexes, and sensation. (Tr. 22.) The ALJ's observation that Plaintiff's physical examinations were generally unremarkable, is supported by substantial evidence. (*See* Tr. 267-68, 272, 274, 279, 315, 320; *but see* Tr. 275 (noting back pain, joint pain, swelling, and stiffness); Tr. 277 (reporting back pain, joint pain, and neck pain); Tr. 285 & 288-90 (reporting back pain).)

Further, as the ALJ stated, the chiropractic treatment notes[6] from October

---

[6] Plaintiff began seeing a chiropractor on January 16, 2013 (his amended onset date). During his acute inflammatory stage in January 2013, there was spasm, hypertonicity, hypomobility, and end point tenderness in several areas, and active trigger points and/or edema in the lumbar region. (Tr. 384, 386, 388, 390, 392-93.) However, in February 2013, Plaintiff was feeling better (Tr. 394-95, 398), as he continued with treatment (Tr. 396-401). In March 2013, Plaintiff continued seeing improvement in his pain level. (Tr. 403; *but see* Tr. 407.) Then, in April and May of 2013, he was again in the acute inflammatory stage. (Tr. 421, 423, 425-26, 428, 430, 432, 434, 436, 438.) Towards the end of May 2013, Plaintiff advanced to the repair and

2013 through December 2014 showed that Plaintiff's prognosis was good, that he felt better after adjustment, and that he had experienced an increase in range of motion and muscle strength and a decrease in pain since treatment began. (*See* Tr. 458, 460, 462, 464, 466, 468, 470, 472, 474, 476, 478, 480, 482, 484.)

Further, the ALJ stated that "the physical findings, observations, and objective studies have largely demonstrated adequate functioning with some transient symptoms." (Tr. 22.) Although the diagnostic tests have indicated some positive findings, there is no indication that they were severe and/or imposed greater limitations than found by the ALJ. (*See* Tr. 350 (noting, *inter alia*, "degenerative disc disease of the lower thoracic spine," as shown on the June 26, 2013 CT scan of the chest); Tr. 342 (noting, *inter alia*, "prominent degenerative changes of the lower lumbar spine," as shown on the August 22, 2014 CT scan of the abdomen and pelvis); Tr. 340 (noting, *inter alia*, "degenerative disc disease of the mid to lower thoracic spine," as shown on the September 24, 2014 CT angiography of the chest).)[7] Based on the foregoing, the

---

regeneration stage, as his pain was decreasing slowly with decompression therapy. (Tr. 440.) He continued with treatment in June, July, and August of 2013, and reported feeling better. (Tr. 442-55.) In September 2013, his prognosis was good, he felt better after the adjustment, and experienced an increase in the range of motion and muscle strength, and a decrease in his pain. (Tr. 456.)

[7] Plaintiff's lumbar MRI, which occurred on December 18, 2014 (after the date last insured), showed disc disease at multiple levels and disc bulging and protrusions at L2/L3, L4/L5, and L5/S1, but no disc herniation. (Tr. 355-56, 496-97.) It does not appear that Dr. Howell considered the MRI or the rest of the diagnostic test results in rendering his opinion. (Tr. 510-14.) In fact, he did not seem to reference any medical records or examination reports in formulating his opinion. (*Id.*)

10

ALJ's reasons for giving little weight to Dr. Howell's opinion are supported by substantial evidence.

In formulating the RFC, the ALJ also considered the opinions of the State agency consultants and gave them great weight. (Tr. 22.) The ALJ reasoned that the consultants "are familiar with the disability review process and had the opportunity to bring this knowledge to their review of the entire medical record as of the dates of their respective assessments." (Id.) The ALJ acknowledged that medical evidence was submitted after their assessments, but noted there was "no evidence of worsening of the claimant's condition or of a new injury to render their opinions less persuasive." (Id.)

Plaintiff asserts that at the time they rendered their opinions, the State agency consultants were not aware of the August 22, 2014 CT scan of the abdomen and pelvis, which showed "prominent degenerative changes of the lower lumbar spine" (Tr. 342), and the September 24, 2014 CT scan of the chest, which showed "degenerative disc disease of the mid to lower thoracic spine" (Tr. 340).[8] However, the September 24, 2014 CT scan of the chest was not inconsistent with the June 26, 2013 CT scan of the chest, which showed

---

[8] Plaintiff also asserts that prior to rendering their opinions, the State agency consultants did not have access to the chiropractic records for the period January 29, 2014 through June 4, 2014. However, these records actually show that despite muscle spasms, subluxations, hypomobility, and end point tenderness, among others, Plaintiff's prognosis was good, he felt better after adjustment, and he had experienced an increase in range of motion and muscle strength and a decrease in pain. (Tr. 464-82.) The ALJ was aware of these records and considered them in determining the RFC.

"degenerative disc disease of the lower thoracic spine." (Tr. 350.) As such, it does not appear that there was any worsening of Plaintiff's condition and, in any event, the ALJ found that Plaintiff's degenerative disc disease was a severe impairment and considered it in determining the RFC.

Further, even "prominent degenerative changes of the lower lumbar spine" (Tr. 342), do not necessarily translate into functional limitations greater in severity than found by the ALJ. It was the ALJ's responsibility to determine the RFC based on the totality of the evidence and that is exactly what he did. *See* 20 C.F.R. § 404.1546(c). Also, his RFC assessment did not need to mirror or match the findings or opinions of any particular medical source. *Kopke v. Astrue*, No. 8:11-cv-1197-T-30TGW, 2012 WL 4903470, *5 (M.D. Fla. Sept. 26, 2012) (report and recommendation adopted by 2012 WL 4867423 (M.D. Fla. Oct. 15, 2012)). Moreover, where, as here, there was sufficient evidence to make a determination on Plaintiff's claim of disability, the ALJ was not required to obtain a consultative examination or re-contact any medical source. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("The administrative law judge has a duty to develop the record where appropriate but is not required to [do so] as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."); *see also* 20 C.F.R. § 404.1520b(b).

The ALJ also noted that the consultants' opinions were "consistent with the overall record, which revealed the claimant ambulated normally, and had normal

motor strength and tone; normal movement of all extremities; normal coordination; normal reflexes; and normal sensation." (Tr. 22.) As shown earlier, there is substantial evidence in the record to support the ALJ's findings. In sum, the ALJ properly evaluated the opinion evidence in the record in formulating the RFC assessment.

To the extent Plaintiff argues that the hypothetical question to the VE was deficient because it did not include certain limitations, this argument is rejected as the ALJ was not required to include in the hypothetical question any limitations or opinions that he had properly rejected. See Crawford, 363 F.3d at 1161 (stating that the ALJ is not required to include findings in the hypothetical question that the ALJ has properly rejected as unsupported by the record). Thus, to the extent Plaintiff argues that the hypothetical question was inconsistent with Dr. Howell's opinion, the ALJ was not required to include opinions or statements that he had properly rejected.

Further, as Defendant points out, since the ALJ decided this case at step four of the sequential evaluation process, he was not required to obtain VE testimony to determine whether Plaintiff could perform his past relevant work. See 20 C.F.R. § 404.1560(b)(2) ("We will ask you for information about work you have done in the past. We may also ask other people who know about your work. . . . We may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion

volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. . . . In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.").

### III. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the Court finds that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question should be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court shall enter judgment consistent with this Order, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on March 11, 2019.

MONTE C. RICHARDSON
United States Magistrate Judge

Copies to:

Counsel of Record